YOUNGWOO JOH, OSB No. 164105
Assistant Deputy City Attorney
Email: YoungWoo.Joh@portlandoregon.gov
Office of City Attorney
1221 SW 4th Avenue, Room 430
Portland, OR 97204
Telephone: (503) 823-9969
Facsimile: (503) 823-3089
*Of Attorneys for City of Portland*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **GOOD GEORGE LLC** an Oregon limited liability company, <br><br> **PLAINTIFF,** <br><br> v. <br><br> **THE CINCINATTI INSURANCE COMPANY** an Ohio corporation, <br><br> **DEFENDANT.** | 3:20-cv-01705-AC (lead case) <br> 3:20-cv-01709-AC <br> 3:20-cv-01711-AC <br><br> *Consolidated for purposes of Rule 12 motion practice* <br><br> **CITY OF PORTLAND'S AMICUS BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS** |

INTRODUCTION

The City of Portland submits this brief as *amicus curiae* in support of Plaintiffs' Response to Defendant's Motion to Dismiss Plaintiffs' Complaints, Dkt. No. 36. Plaintiffs in this case are businesses who have suffered business-income losses as a result of that pandemic. Plaintiffs filed this lawsuit because the defendant insurers, Cincinnati Insurance Co. and Cincinnati Casualty Co., have denied them coverage under "all-risk" insurance policies. This brief supports and supplements Plaintiffs' opposition to the Cincinnati insurers' motion to dismiss by addressing the necessity of government-ordered restrictions on business activity, the likely city-budget impact of a judicial endorsement of coverage denial, and the public-health danger of defendants' arguments.

Page 1 – CITY OF PORTLAND'S AMICUS BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

# CITY OF PORTLAND'S INTEREST

As explained in its motion to appear as *amicus*, the City is politically accountable for ensuring the public health of the City's residents and visitors. *See* Mayor Wheeler, Extension of Emergency Declaration Through July 16, 2020 (July 2, 2020)[1] ("[I]t is essential that the spread of the virus be slowed to protect the ability of public and private health care providers to handle the influx of new patients, safeguard public health and protect all members of the community, especially health care providers and those most vulnerable to the virus (including but not limited to people with disabilities, people with underlying health conditions and older people).")). Further, as described below, the City relies on business-license fees for its general-fund budget, which funds, among other things, public safety, parks and recreation, culture, and community development.

A ruling on this motion would impact those interests. A judicial endorsement of coverage denial would likely push many more Portland businesses to cut losses and close, exacerbating the general-fund budget shortfall caused by COVID-19. And dismissal based on Defendants' arguments could incentivize business decisions that increase the risk of spreading COVID-19. On the other hand, denial of Defendants' motion may very well be the assurance that Portland businesses need to push through to the other side of this pandemic.

## FRAP 29(a)(4)(E) STATEMENT.[2]

No party or party's counsel has authored any portion of this brief or has contributed any money for the preparation or submission of this brief. Fed. R. App. P. 29(a)(4)(E). Nor has any person other than *amicus* City of Portland contributed any money to prepare or submit this brief. *Id.*

//

---

[1] https://www.portland.gov/sites/default/files/2020-07/cop-emergency-declaration-extension-through-july-16-2020.pdf

[2] The Federal Rules of Civil Procedure do not prescribe a particular form for *amicus* briefs. The City thus follows the guidance of Federal Rule of Appellate Procedure 29.

Page 2 –  CITY OF PORTLAND'S AMICUS BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS

# ARGUMENT

This case is about whether "all-risks" insurance covers the loss of physical use of property caused by the 2019 coronavirus disease, COVID-19, when the insurance policy does not exclude virus- or pandemic-related causes of loss. Defendants, The Cincinnati Casualty Company and The Cincinnati Insurance Company, sold business-interruption insurance to Plaintiffs that covered "direct 'loss' to Covered Property . . . caused by or resulting from any Covered Cause of Loss." (Mississippi Productions Compl. ¶ 7 (accord with other complaints).) Unlike other insurance-industry policies, the policies do not exclude from coverage virus- or pandemic-related claims. But, not only do the Cincinnati insurers argue that pandemics are not covered, they argue that Plaintiffs cannot make any valid argument to the contrary. (Def.'s Mot. to Dismiss Pl.'s Compls., Dkt. No. 25.) That is wrong, for the reasons explained by Plaintiffs. (Pl.'s Resp. to Def.'s Mot. to Dismiss Pl's Compls., Dkt. No. 36.)

The City of Portland files this brief to make three points that supplement and support Plaintiffs' opposition to the Cincinnati insurers' motion. First, government-ordered preventative measures, which have prohibited full-capacity business activity since March of 2020, were essential to prevent countless deaths and long-term health effects caused by COVID-19. Second, a judicial endorsement of coverage denial would likely pile on substantial uncertainty to the City's general-fund budget, which funds, among other things, public safety, parks and recreation, culture, and community development. Lastly, the Cincinnati insurers' argument that there is no "loss" because government orders permit severely limited use of property dangerously incentivizes businesses—many of which are already making difficult choices between safety and economic survival—to make choices that increase the risk of spreading COVID-19. For those reasons, and in addition to those described in Plaintiffs' response, this court should deny the Cincinnati insures' motion to dismiss.

//

//

Page 3 – CITY OF PORTLAND'S AMICUS BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

I. **Background: The COVID-19 Pandemic**

The United States has not seen a pandemic of this scale and danger since the 1918 flu pandemic. Centers for Disease Control and Prevention, *The 1918 Flu Pandemic: Why it Matters 100 Years Later*, May 14, 2018.[3] But, even before this pandemic, the growing risk of a global pandemic had been noted by both public-health experts and the insurance industry. *See, e.g.*, *id.*; Jessie Yeung, *The Risk of a Global Pandemic is Growing – and the World Isn't Ready, Experts Say*, CNN (Sept. 18, 2019)[4]; John K. DiMungo, *Catastrophe Claims: Insurance Coverage for Natural and Man-Made Disasters* § 8:3 (Nov. 2020 ed.) ("In 2002-2004, following the SARS outbreak, the insurance industry introduced the virus exclusion to eliminate disputes over coverage for contamination of a business premises by a virus or bacteria by excluding coverage altogether.").

At the time of filing this brief, over 500,000 Americans in the United States have died because of COVID-19. Centers for Disease Control and Prevention, *COVID Data Tracker*[5] (last visited Feb. 26, 2021). According to the Centers for Disease Control and Prevention, in addition to death, the disease can cause long-term health effects, such as inflammation of heart muscle, lung-function abnormalities, kidney injury, and neurological issues. CDC, *Long-Term Effects of COVID-19*[6] (last visited Feb. 26, 2021); *see also* Mayo Clinic, *COVID-19 (coronavirus): Long-Term Effects* (Nov. 17, 2020).[7] Further, older adults and many of those with underlying health conditions face a markedly increased risk of serious health effects or death. CDC, *Older Adults*[8] (last visited Feb. 26, 2021); CDC, *People With Certain Medical Conditions*[9] (last visited Feb. 26,

---

[3] https://blogs.cdc.gov/publichealthmatters/2018/05/1918-flu/

[4] https://www.cnn.com/2019/09/18/health/who-pandemic-report-intl-hnk-scli/index.html

[5] https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days

[6] https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html

[7] https://www.mayoclinic.org/diseases-conditions/coronavirus/in-depth/coronavirus-long-term-effects/art-20490351

[8] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html

[9] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

Page 4 – CITY OF PORTLAND'S AMICUS BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

2021). The CDC has also noted "increasing evidence that some racial and ethnic groups are being disproportionality affected by COVID-19." CDC, *Health Equity Considerations and Racial and Ethnic Minority Groups*[10] (last visited Feb. 26, 2021). In short, COVID-19 is a deadly disease that has caused—and continues to cause—significant loss of life and health.

**II. Government prohibitions on business activity in March 2020 prevented countless deaths and long-term health effects.**

It is rightly undisputed that COVID-19 was present and posing a serious public-health risk in Portland at the times relevant to this case. COVID-19 was circulating in Multnomah County by, at the very latest, March 10, 2020, with 15 cases statewide. Or. Health Auth., *First Multnomah County Resident Tests Positive for COVID-19* (Mar. 10, 2020).[11] Only four days later, the disease was confirmed to have already been circulating in Portland's city center. Mike Rogoway, *Coronavirus Case Linked to Downtown Portland Skyscraper*, Portland Tribune (Mar. 14, 2020).[12] And by then end of May, around when the Cincinnati insurers had denied coverage to the Plaintiffs, the statewide count had risen to approximately 4,243 confirmed cases, with 153 deaths. Or. Health Auth., *Oregon Reports 58 New Confirmed and Presumptive COVID-19 Cases and No New Deaths* (May 31, 2020).[13] Of those, about 1,103 cases and 59 deaths were confirmed in Multnomah County. Multnomah County, Emergency Operations Center, *Situation Report* at 1-2 (May 29, 2020).[14]

The Oregon Health Authority characterized the May numbers as "dramatically reduc[ed]

---

conditions.html

[10] https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html

[11] https://www.oregon.gov/oha/ERD/Pages/first-multnomah-county-resident-tests-positive-covid-19.aspx

[12] https://pamplinmedia.com/pt/9-news/456350-372216-coronavirus-case-linked-to-downtown-portland-skyscraper-pwoff

[13] https://www.oregon.gov/oha/ERD/Pages/Oregon-reports-58-new-confirmed-presumptive-COVID-19-cases-no-new-deaths.aspx

[14] https://multco.us/file/89437/download

Page 5 – CITY OF PORTLAND'S AMICUS BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

transmission rates" that resulted from aggressive preventative interventions. Or. Health Auth., *Brief Report: COVID-19 Epidemic Trends and Projections in Oregon* at 2 (May 29, 2020).[15] Those preventative measurements included prohibitions on on-premises dining, prohibitions on operating without distancing customers or staff, and prohibitions on operating as a club or theater. Executive Order 20-07[16] at 2; Executive Order 20-12[17] at 4. There can be little doubt that those measures prevented countless cases of COVID-19 and, consequently, related deaths and long-term health impacts. Those restrictions remain in some form today. *See, e.g.*, Oregon Health Authority, *Sector Guidance – Eating and Drinking Establishments*[18] (Jan. 29, 2021); Oregon Health Authority, *Sector Guidance – Indoor Entertainment Establishments*[19] (Feb. 9, 2021).

Nine months later, as of February 23 of this year, cases have skyrocketed to 153,645, with a cumulative death toll of 2,162. Or. Health Auth., *Oregon Reports 528 New Confirmed and Presumptive COVID-19 Cases, 8 New Deaths* (Feb. 23, 2021)[20]; *see also* Or. Health Auth.*, Oregon's Epi Curve: COVID-19 Cases*[21] (last visited Feb. 23, 2021) (chart showing daily cases since March of 2020). That increase occurred *with* preventative measures in place. *Without* those measures, COVID-19 cases would grow exponentially, with each additional transmission steadily and certainly multiplying the risk of further transmission. Ethan Siegel, *Why 'Exponential Growth' Is So Scary For the COVID-19 Coronavirus*, Forbes, Mar. 17, 2020.[22]

---

[15] https://www.oregon.gov/oha/PH/DISEASESCONDITIONS/DISEASESAZ/Emerging%20Respitory%20Infections/Oregon-COVID-19-Projections-2020-05-29.pdf

[16] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-07.pdf

[17] https://www.oregon.gov/gov/Documents/executive_orders/eo_20-12.pdf

[18] https://sharedsystems.dhsoha.state.or.us/DHSForms/Served/le2351b.pdf

[19] https://sharedsystems.dhsoha.state.or.us/DHSForms/Served/le2351a.pdf

[20] https://content.govdelivery.com/accounts/ORDHS/bulletins/2c375c9

[21] https://public.tableau.com/profile/oregon.health.authority.covid.19#!/vizhome/OregonHealthAuthorityCOVID-19DataDashboard/COVID-19EPICases

[22] https://www.forbes.com/sites/startswithabang/2020/03/17/why-exponential-growth-is-so-

Page 6 – CITY OF PORTLAND'S AMICUS BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

Thus, although it is difficult to quantify exactly how many long-term health impacts or deaths were prevented, it is clear that government-ordered restrictions on business activity were—and continue to be—absolutely essential preventative measures against COVID-19. There can be little doubt, then, that the COVID-19 pandemic has caused those restrictions; in other words, the pandemic has caused Plaintiffs to lose physical use of their property. Plaintiffs should get their day in court to establish coverage on that basis, and the Cincinnati insurers' motion to dismiss should therefore be denied.

### III. COVID-19 has already seriously impacted the City's budget—unwarranted coverage denial piles on avoidable uncertainty.

The impacts of the COVID-19 pandemic extend also to the City's ability to provide important public services. The pandemic is forecasted to reduce Portland's general-fund budget by $75 million for the upcoming fiscal year. City of Portland, *Adopted Budget Fiscal Year 2020-21 – Volume I: Citywide Summaries & Bureau Budgets* at 10.[23] That is a whopping 10-percent[24] reduction of the general fund, which the City uses to fund public safety, parks and recreation, culture, community development, and other items. *Id.* at 40. To account for those shortfalls, the City has had to tap into reserves, freeze wages and hiring, and furlough employees. *Id.* at 11, 41. Even still, the City remains 12 percent short of closing the $75 million gap, and the City has been forced to revisit that budget gap when addressing the fall budget. *Id.* at 12.

Widespread insurance-coverage denial will pile on substantial—but avoidable—uncertainty. The City relies heavily on business-license fees for its general fund. This upcoming fiscal year, the revenue is expected to be $114 million, 16 percent of the total general fund. *Id.* at 40. That is a decrease of over $30 million from last fiscal year. City of Portland, *Adopted*

---

scary-for-the-covid-19-coronavirus/?sh=b03eb354e9b2

[23] https://www.portland.gov/sites/default/files/2020-07/adopted-budget-vol-1-portland-citywide-summaries-and-bureau-budgets.pdf

[24] Rounded up from about 9.5 percent.

Page 7 – CITY OF PORTLAND'S AMICUS BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

*Budget Fiscal Year 2019-20 – Volume I: Citywide Summaries & Bureau Budgets* at 30.[25] Further, the City relies on county-provided services funded by business-income taxes, such as for libraries, community safety, bridges, and public health. City of Portland, Revenue Division, *About the Taxes – Overview: Multnomah County Business Income Tax (MCBIT)*[26] (last visited Feb. 25, 2021). It is no leap, then, to infer that the many more business closures likely to result from widespread insurance-coverage denial, like those of the Cincinnati insurers, piles on the mountain of uncertainty.[27]

And this is not a case of the equities facing a cliff of contractual unambiguity. Like other Portland businesses that have purchased all-risk policies, Plaintiffs rely on their insurance policies to mitigate risk, such as the foreseeable risk of a pandemic. The Cincinnati insurers could have excluded virus- or pandemic-based claims from coverage if they wished to do so. They did not. And, as Plaintiffs argue, Oregon courts resolve insurance-policy ambiguities in favor of the insured. (Pl.'s Resp. to MTD at 3, Dkt. No. 36 (citing Oregon case law).) Whatever the merits of the Cincinnati insurers' defensive arguments, Plaintiffs have certainly stated a valid claim under Federal Rule of Civil Procedure 12(b)(6). This court should thus deny the insurers' motion to dismiss.

---

[25] https://www.portland.gov/sites/default/files/2020-07/adopted-budget-volume-1.pdf. Note that COVID-19 forced the City to reduce its budget forecast by $28.5 million for fiscal-year 2020-21 and that the City used its reserves to help reduce the budget-impact of COVID-19. *Adopted Budget FY 2020-21* at 10, *supra*.

[26] https://www.portlandoregon.gov/revenue/article/216081#OverviewMCBIT

[27] *See, e.g.*, Brooke Jackson-Glidden, *Beloved Beer Bar Bailey's Taproom Has Closed For Good*, Eater, Portland, OR, Feb. 8, 2021, https://pdx.eater.com/22240842/portland-restaurant-bar-cafe-closings (describing other permanent closures); Michael Russell, *Oregon restaurants that have closed permanently due to COVID-19*, The Oregonian, Nov. 4, 2020, https://www.oregonlive.com/coronavirus/2020/05/oregon-restaurants-and-bars-that-closed-permanent-during-coronavirus-crisis.html; Kim Moore*, Small Businesses Decry COVID Closures*, Oregon Business, Nov. 16, 2020, https://www.oregonbusiness.com/article/economy/item/19203-small-businesses-decry-covid-closures (reporting that the National Federation of Independent Business/Oregon claims that "40% of its members face permanent closure within the year"); Wright Gazaway, *Oregon restaurant industry fears permanent closures loom after COVID-19 'freeze'*, KATU2, Nov. 13, 2020, https://katu.com/news/local/oregon-restaurant-industry-fears-permanent-closures-loom-after-covid-19-freeze.

Page 8 – CITY OF PORTLAND'S AMICUS BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047

## IV. Requiring total loss of use creates a perverse incentive to make business choices that increase the risk of spreading COVID-19.

The Cincinnati insurers make the concerning argument that, because COVID-19 restrictions allow Plaintiffs to operate in some capacity and with some access (severely limited capacity and access), there is no physical loss or damage to property. (Def.'s MTD at 24, 29, Dkt. No. 25.) That cannot be true. If it were, then it would mean that businesses can seek coverage only when the business is forced to completely shut down, such as when an employee contracts COVID-19. And if that were true, it would give a perverse incentive for businesses—many of which are already in economic survival mode—to trade safety measures for increased capacity. It cannot be the case that the correct interpretation of the insurance policies is one that incentivizes increasing public-health risks. This court should reject that argument and deny the motion to dismiss.

## CONCLUSION

The Cincinnati insurers chose to sell plaintiffs all-risk insurance. The Cincinnati insurers chose not to exclude virus- or pandemic-related claims. Whatever the merits of the Cincinnati insurers' defensive arguments, Plaintiffs have certainly stated a valid claim under Federal Rule of Civil Procedure 12(b)(6). This court should thus deny the insurers' motion to dismiss.

DATED: March 8, 2021 Respectfully submitted,

*/s/ YoungWoo Joh*
YOUNGWOO JOH, OSB No. 164105
Assistant Deputy City Attorney
youngwoo.joh@portlandoregon.gov
*Of Attorney for City of Portland*

Page 9 – CITY OF PORTLAND'S AMICUS BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINTS

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, RM 430
PORTLAND, OREGON 97204
(503) 823-4047